IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 8, 2021

**STATE OF TENNESSEE v. G'WAYNE WILLIAMS**

**Direct Appeal from the Circuit Court for Lauderdale County
No. 9984      Joe H. Walker, III, Judge**

_____

**No. W2020-01608-CCA-R3-CD**

_____

A Lauderdale County jury convicted the Defendant, G'Wayne Williams, of numerous sexual offenses. *State v. G'wayne Kennedy Williams a/k/a Kenney Williams*, No. W2018-00924-CCA-R3-CD, 2020 WL 211546, at *1 (Tenn. Crim. App, at Jackson, Jan. 14, 2020). The trial court imposed a sixty-four-year sentence. *Id.* On appeal, this court vacated and dismissed fifteen of the Defendant's convictions and concluded that the trial court had improperly merged a number of the Defendant's convictions. We remanded the case for entry of corrected judgments and resentencing where applicable and affirmed the Defendant's remaining convictions. *Id.* On remand, the trial court dismissed the relevant convictions, merged the additional relevant convictions, and resentenced the Defendant on twelve of the convictions. The trial court concluded that it had lost jurisdiction as to the Defendant's remaining convictions affirmed on appeal. On this second appeal, the Defendant asserts that the trial court erred in finding it had lost jurisdiction on the convictions affirmed by this court. He further contends his sentence is excessive. After a thorough review of the record and the applicable law, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and J. ROSS DYER, JJ., joined.

Timothy J. Gudmundson, Clarksville, Tennessee, for the appellant, G'Wayne Williams.

Herbert H. Slatery III, Attorney General and Reporter; Samantha L. Simpson, Assistant Attorney General; Mark E. Davidson, District Attorney General; and Julie K. Pillow, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION
I. Facts**

This case arises from the Defendant's repeated rape of the victim, his minor stepson, between 2012 and 2015. Based on this conduct, a Lauderdale County grand jury indicted the Defendant for four counts of rape; four counts of aggravated statutory rape; four counts of statutory rape by an authority figure; four counts of sexual battery by an authority figure; forty-five counts of incest; forty-one counts of rape of a child; forty-one counts of aggravated sexual battery; and two counts of violating the requirements of the sex offender registry. *Williams*, 2020 WL 211546, at *1.

## A. Trial and Initial Sentencing

In the interest of brevity, we quote only the victim's direct testimony at trial, as summarized by this court on appeal:

[The victim] J.M. testified that his date of birth was December 14, 2001, and that at the time of trial he was age fifteen. His mother, A.M., married the Defendant in Wisconsin when J.M. was in third or fourth grade. J.M. stated that the Defendant wore a black ankle bracelet in Wisconsin, that the family moved to Tennessee before J.M. started fifth grade, and that the Defendant did not wear the ankle bracelet in Tennessee. J.M. said that the Defendant's behavior changed once he stopped wearing the ankle bracelet. Specifically, in Wisconsin, the Defendant was "nice, kind, he was nice to [A.M., and they] used to go fishing[.]" Once the Defendant got the ankle bracelet off, it "was like [he] just changed bodies." The Defendant told J.M. that he wore the ankle bracelet for "[h]is heart[,]" although J.M. "[knew] different[ly] now[.]"

The family initially lived in a house on Main Street in Ripley, Tennessee, for about one year, then on College Street for one year, and finally on Spring Street for one or two years before J.M. moved to Chicago with his biological father. A.M., J.M.'s three sisters, and the Defendant lived with J.M. at those locations in Tennessee. At some point when the family lived on Spring Street, the Defendant and A.M. argued, and the Defendant moved into a trailer with [the Defendant's brother].

J.M. went to the Defendant's trailer "[a] lot" to play video games, sometimes accompanied by three of his friends. J.M. spent the night at the trailer and had clothes there. J.M. stated that on January 16, 2015, he had a meeting at school with the principal, A.M., and some teachers regarding whether he would be sent to an alternative school for "acting out." J.M. acknowledged that he had been acting out, and he stated that he was angry due to "[t]hings that [were] going on at home. Don't know really why I was . . . taking my anger out on everybody else." J.M. clarified that he referred

2

to "[t]he things with [the Defendant]." J.M. stated that at the meeting, he said that the Defendant "was touching" him. After he made this statement, A.M. stayed in the room; the teachers left; and a police officer came into the room. J.M. did not remember where A.M. went while the police officer spoke to him.

J.M. testified that he did not tell A.M. about the abuse because he was "afraid." He said, though, that he told A.M. about an instance in which he and the Defendant watched pornography together when J.M. was in fourth grade.

J.M. testified that on January 15, 2015, he was at the Defendant's trailer with his friends and [the Defendant's brother]. [The Defendant's brother] left to visit his girlfriend. J.M. and his friends played video games on an Xbox. J.M.'s friends were picked up by their mother. J.M. went to the "back bedroom" to retrieve "the game box" and the Defendant followed him. The Defendant told J.M. to pull down his pants; the Defendant pulled down his own pants; the Defendant applied a lubricant to his penis and sat on the bed; and the Defendant told J.M. to "sit on" his penis. J.M. faced away from the Defendant and did as he was told; the Defendant ejaculated. The Defendant told J.M. to put his mouth on the Defendant's penis, and J.M. complied. The Defendant told J.M. "to get in a dog position" on the bed; J.M. complied; and the Defendant anally penetrated J.M. with his penis before ejaculating into a towel. When asked "how long this had been going on," J.M. estimated five years. J.M. stated that "things" also happened at the Spring Street, College Street, and Main Street houses.

J.M. testified that on one occasion in the Spring Street house, the Defendant went to an upstairs closet, applied petroleum jelly to his penis, came into J.M.'s bedroom, and anally penetrated J.M. J.M. was positioned with his back on the floor with his legs over his head. On another occasion at the Spring Street house, the Defendant told J.M. to put his mouth on the Defendant's penis while they were in J.M.'s bedroom. On yet another occasion at the Spring Street house in the basement, the Defendant took "two covers down [and] put them on the floor" and applied "another grease to his penis"; the Defendant anally penetrated J.M; the Defendant put his mouth on J.M's penis and told J.M. to put his mouth on the Defendant's penis; and J.M. put his mouth on the Defendant's penis.

J.M. testified that when the family lived on College Street, the house was small and they shared bedrooms. A.M. worked delivering food to elderly people, and the Defendant had a key to A.M.'s workplace. When no

3

one else was in the building, the Defendant took J.M. to A.M.'s workplace's reception area, applied cocoa butter to his penis, and told J.M. to "sit on it."

J.M. testified that when the family lived on Main Street, on one occasion, A.M. was doing J.M.'s sister's hair in a front room when the Defendant took J.M. into A.M.'s bedroom. The door was closed; the Defendant did not apply lubricant to his penis and told J.M. to sit on it; and the Defendant anally penetrated J.M. as the Defendant sat on the bed. The Defendant did not undress, and J.M. had his pants pulled down in the back. On another occasion, A.M. and J.M.'s sisters went to church, but the Defendant told A.M. falsely that J.M. had thrown up so that the Defendant and J.M. would stay home. In the front room of the house, the Defendant anally penetrated J.M. without using lubricant. J.M. was in "a dog position" with "one leg . . . off the couch[.]" J.M. stated that generally, "either . . . somebody [was] home and [the Defendant] would tell me to come into the room and lock – I mean, not lock the door – close the door, or they would be gone to church." One time, the Defendant told A.M. that they needed milk to get her to leave the house, but J.M.'s sister remained in the house.

J.M. testified that it "d[id]n't feel right" when the Defendant anally penetrated him and that it sometimes hurt. J.M. stated that after the meeting at his school, he told his teachers, family members, a friend, a doctor, a foster parent, a person at the "Carl Perkins Center," a police officer, and a social worker what the Defendant had done to him. J.M. also testified in a preliminary hearing. J.M. affirmed that he was telling the truth and stated that when he was living with his father in Chicago, [the Defendant's brother] called him and said, "Why did you tell, and couldn't [you have] told any other of our family members." J.M. said that the Defendant sent letters to A.M. and that [the Defendant's brother] signed them and claimed to have authored them.

*Williams*, at *7. Based upon the evidence presented at trial, the jury convicted the Defendant as charged: four counts of rape; four counts of aggravated statutory rape; four counts of statutory rape by an authority figure; four counts of sexual battery by an authority figure; forty-five counts of incest; forty-one counts of rape of a child; forty-one counts of aggravated sexual battery; and two counts of violating the requirements of the sex offender registry. *Id.* at *17. After merger, the remaining convictions reflected three convictions for rape (Class B felony), eight convictions for rape of a child (Class A felony), and two counts of violating the sex offender registry (Class E felony). *Id.*

The following occurred at the Defendant's initial sentencing hearing:

4

The trial court found that the Defendant was convicted in 1991 of sexual battery in Wisconsin and "received a conviction of first degree sexual assault of a child," for which he had received a twelve-year sentence, to be served consecutively to another sentence he was serving. In 1990, the Defendant was convicted of "possession or receiving or selling" a stolen vehicle, for which he received thirty months [of] probation. In 1989, he was convicted of sexual assault, for which received a three-year sentence, to be served in confinement for ninety days and the remainder on probation. That court ordered the Defendant not to have contact with juveniles. The Defendant's prior sex offenses involved his twelve-year-old niece and an eight-year-old "female friend."

The trial court sentenced the Defendant to twelve years each for the rape convictions in Counts 1, 6, and 11 as a Range II, multiple offender, which carried statutory 100% service. The court ordered concurrent service of the sentences. The court sentenced the Defendant to twenty-five years each for the rape of a child convictions in Counts 48, 51, 54, 57, 60, and 69. The court noted that the statute mandated a Range II sentence regardless of the Defendant's range classification. The court ordered the rape of a child sentences to run concurrently with one another and consecutively to Counts 1, 6, and 11. The court sentenced the Defendant to twenty-five years each for the rape of a child convictions in Counts 105 and 108. The court ordered the sentences to run concurrently with one another and consecutively to Counts 48, 51, 54, 57, 60, and 69. The court sentenced the Defendant to two years for each of the sex offender registry convictions in Counts 144 and 145, to run concurrently with one another but consecutively to all other counts. The court stated that the Defendant was not eligible for probation or community corrections.

The trial court found by a preponderance of the evidence that the Defendant was an offender with a record "of criminal activity of abusing children, worse than abusing children. It is extensive. He's a dangerous offender who indicates [ ] little or no regard for the rights of children or the ability of children to remain free from his type of being a predator." The court also found that consecutive sentencing was reasonably related to the severity of the offenses committed and served to protect the public or society, "especially children, from further criminal activity by someone who has resorted to the same kind of conduct in the past, served a penitentiary sentence, released, and immediately takes it back up[.]" The court stated that the sentences were "congruent with the general principles of sentencing" and that the Defendant had been convicted of two or more offenses involving sexual abuse of a minor. The court considered "aggravated circumstances arising from the relationship between the [D]efendant and the victim; and

that the timespan of the [D]efendant's undetected sexual activity, the nature and scope of the sexual activity, and the extent of the residual, physical, and mental damage to the victim was severe[.]" The Defendant's total effective sentence was sixty-four years.

*Id.* at *17-18 (footnotes omitted).

## B. First Appeal and Remand

During his first appeal to this court, the Defendant argued, relevant here, that the evidence was insufficient to support his convictions for rape and rape of a child and that the trial court erred in its application of "certain enhancement factors" in sentencing and imposed an excessive sentence. *Id.* at *18.

In our opinion, this court concluded that, relative to the rape of a child, aggravated sexual battery, and incest convictions in Counts 48-62, the State had not carried its burden of proving its election beyond a reasonable doubt. *Id.* at *24. We also concluded that the victim's age was not proven beyond a reasonable doubt relative to the rape of a child and aggravated sexual battery convictions in Counts 48, 50, 51, 53, 54, 56, 57, 59, 60, and 62, and that as a result the evidence was insufficient to support the convictions. *Id.* We therefore dismissed and vacated the Defendant's convictions in Counts 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, and 62 and remanded the case to the trial court for resentencing in light of those reversals. *Id.* Additionally, although raised by neither party, this court concluded that the trial court had improperly merged some of the Defendant's convictions, *id.* at *29, stating the following:

We conclude that the trial court improperly merged aggravated statutory rape (Counts 2, 7, and 12), statutory rape by an authority figure (Counts 3, 8, and 13), sexual battery by an authority figure (Counts 4, 9, and 14), and incest (Counts 5, 10, and 15) into the rape convictions (Counts 1, 6, and 11). Each of these respective convictions require elements pertaining to the victim's and the defendant's ages and relationship (kinship or a position of trust) that rape does not; similarly, they do not require proof of non-consent.

We note, however, that sexual battery by an authority figure is a lesser-included offense of statutory rape by an authority figure. Two differences exist in the elements of these offenses—proof of sexual contact versus sexual penetration and proof of the defendant's being at least four years older than the victim. Relative to the degree of sexual contact, pursuant to part (b) of our supreme court's analysis in *State v. Burns*, 6 S.W.3d 453, 466-67 (Tenn. 1999), an offense is a lesser-included offense if the only distinguishing elements establish, in relevant part, "a different mental state

6

indicating a lesser kind of culpability . . . [or] a less serious risk of harm to the same person[.]" Proof of sexual contact involves a less serious risk of harm than sexual penetration. *See, e.g., State v. Howard*, 504 S.W.3d 260, 274 (Tenn. 2016) (discussing in the context of rape of a child and aggravated sexual battery that sexual contact involved a less serious risk of harm and a lesser degree of culpability than sexual penetration). The only remaining distinguishing element between the offenses is proof of the defendant's age in statutory rape by an authority figure. Because each offense does not contain a distinct element from the other, they should have been merged to reflect three counts of statutory rape by an authority figure. Therefore, we remand for corrected judgments reflecting the merger of Counts 4, 9, and 14 into Counts 3, 8, and 13, respectively, and separate sentencing on Counts 2, 3, 5, 7, 8, 10, 12, 13, and 15.

Likewise, the trial court erred by merging the incest convictions in Counts 49, 52, 55, 58, 61, 70, 106, and 109 into the rape of a child convictions in Counts 48, 51, 54, 57, 60, 69, 105, and 108, respectively. Incest requires proof of a familial relationship and does not require proof of the victim's age. However, because the State's elected dates were not proven in relation to Counts 49, 52, 55, and 61, as discussed above, these convictions have been reversed and dismissed. We therefore remand for sentencing on the remaining incest convictions in Counts 70, 106, and 109.

The Defendant's convictions as revised herein will reflect the following: three counts of rape (Counts 1, 6, and 11); three counts of aggravated statutory rape (Counts 2, 7, and 12); three counts of statutory rape by an authority figure (Counts 3, 8, and 13); six counts of incest (Counts 5, 10, 15, 70, 106, and 109); three counts of rape of a child (Counts 69, 105, 108); and two counts of violating the sex offender registry (Counts 144 and 145). None of these convictions should be merged. We remand the convictions for resentencing.

.

*Id.* at \*31. Based on these conclusions, this court reversed and dismissed fifteen of the Defendant's convictions for insufficient evidence and remanded to the trial court for resentencing "for the entry of judgments reflecting separate convictions in Counts 2, 3, 5, 7, 8, 10, 12, 13, 15, 70, 106, and 109, and for the entry of corrected judgments reflecting the merger of Counts 4, 9, and 14 into Counts 3, 8, and 13, respectively." *Id.* This court affirmed the trial court's judgments in all other respects. *Id.*

## C. Resentencing

On remand, the trial court held a hearing and heard brief arguments from the parties, following which it entered a corrected judgment form for each of the dismissed

7

convictions. The trial court also entered corrected judgments merging "Count 4 into Court 3, Count 9 into Count 8, Count 14 into Count 13." As for resentencing, the trial court proposed that the Defendant be sentenced to the minimum within-range sentence, and that the sentences run concurrently, which would not change the Defendant's sentence.

The trial court addressed the Defendant's "overall" sentence, stating that it had "lost jurisdiction" on the convictions not addressed by this court as "needing correcting, resentencing, or merging." The trial court resentenced the Defendant as follows:

> So in Count 2, the Court sentences the defendant to 4 years concurrent with Count 1 through 15. In Count 3 to 12 years concurrent with Count 1 through 15. In Count 5 to 6 years concurrent with Count 1 through 15. In Count 7, 4 years concurrent to Count 1 through 15. In Count 8, 12 years for Count 1 through 15. In Count 10 to 6 years in Counts 1 through 15. Count 12 to 4 years in Counts 1 through 15. In Count 13 to 12 years concurrent with Counts 1 through 15. In Count 15 to 6 years concurrent with Counts 1 through 15 or 14. In Count 70, the defendant is sentenced to 6 years concurrent with Count 69, which is one of the sentences which he's actually serving. But consecutive to Counts 1, 6, and 11. Again -- and in Count 106, concurrent with Count 105, which is a sentence for which he's actually serving and consecutive to Counts 1 through 15 and Count 69. And for Counts 109, concurrent with Count 108. Again, a sentence that he's actually serving. 108 and 105 are concurrent to one another and consecutive to Counts 1 through 15 and Count 69. That's a 6-year sentence.

The trial court stated that the net effect of the resentencing did not change the Defendant's total effective sentence and that it did not have jurisdiction to address the remaining counts that had been affirmed by this court on appeal. It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant asserts that the trial court erred in finding it had lost jurisdiction on the convictions affirmed by this court. He further contends his sentence is excessive. We respectfully disagree.

## A. Jurisdiction

The Defendant contends that the trial court erred in its determination that it lacked the jurisdiction to resentence the Defendant, in light of his fewer convictions than at the initial sentencing hearing. The State responds that the trial court properly concluded it did not have jurisdiction to resentence the Defendant as to his convictions affirmed by this court in the initial appeal. We agree with the State.

8

It is long settled that "a trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed." *State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996) (citing Tenn. R. App. P. 4(a) and (c); *State v. Moore*, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991)). "The jurisdiction of the Court of Criminal Appeals attaches upon the filing of the notice of appeal and, therefore, the trial court loses jurisdiction." *Id.* (citations omitted). Once the trial court loses jurisdiction, it generally has no power to amend its judgment. *Id.* (citing Moore, 814 S.W.2d at 382). Such is the case here. This court, in its opinion on the Defendant's first appeal, affirmed all of the Defendant's convictions save those we explicitly remanded for dismissal, merger, or resentencing. The convictions we affirmed on appeal were within the jurisdiction of this court alone, as the trial court lost its jurisdiction when they became final and/or were appealed to this court, and, without further action by this court, the trial court had no jurisdiction to amend. *Id.*; *see also State v. Green*, 106 S.W.3d 646, 648-49 (Tenn. 2002). Accordingly, the trial court was without jurisdiction to take any action on the Defendant's convictions, other than those expressly dismissed or remanded for further action by this court. The Defendant is not entitled to relief on this issue.

## B. Sentencing

The Defendant also contends that his total effective sentence is excessive. He contends that we should review his sentence *de novo* with no presumption of correctness. The State replies that the trial court properly sentenced the Defendant to a within-range sentence and that it did not abuse its discretion in doing so. The State points out that the trial court was limited to its previous sentencing decisions that were affirmed by this court. We agree with the State.

"[S]entences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

We would note that the only sentences available for our reconsideration are those for which the Defendant was resentenced on remand, as the remainder of his sentences became "law of the case" when the convictions were affirmed by this court on appeal. *See Rouse v. Daimler Chrysler Corp.*, 300 F.3d 711, 715 (6th Cir. 2002) (noting that the law of the case doctrine, which generally prevents reconsideration of claims that have been decided at a previous stage in the same litigation); *see also Memphis Publ'g Co. v. Tenn. Petroleum Underground Storage Tank Bd.*, 975 S.W.2d 303, 306 (Tenn. 1998) (recognizing that the law of the case doctrine "is a longstanding discretionary rule of judicial practice which is based on the common sense recognition that issues previously litigated and decided by a court of competent jurisdiction ordinarily need not be revisited").

As to the Defendant's sentences for which he was resentenced by the trial court upon remand, the trial court simply imposed the within-range minimum sentence applicable to the Defendant's convictions. We note the lengthy consideration undertaken by the trial court at the Defendant's initial sentencing, identifying the purposes and principles of sentencing in light of the Defendant's criminal behavior and the grave nature of his offenses, as well as his weighty criminal history. Abiding by these considerations, the trial court imposed the minimum sentence upon remand. We conclude that the trial court did not abuse its discretion when it did so, and the Defendant is not entitled to relief on this issue.

### III. Conclusion

In accordance with the aforementioned reasoning and authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

10